# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PETER BECKER, | : | |
| Plaintiff, | : | Case No. 3:05cv00360 |
| vs. | : | Magistrate Judge Sharon L. Ovington<br>(By consent of the parties) |
| THE BOARD OF TRUSTEES<br>CLEARCREEK TOWNSHIP, OHIO,<br>et al. | : | |
| | : | |
| Defendant. | : | |

---

**DECISION, ORDER, AND ENTRY GRANTING DEFENDANTS THE BOARD OF TRUSTEES CLEARCREEK TOWNSHIP, OHIO, DENNIS A. PICKETT, RONALD L. WILHELM, LARRY B. CORNETT, AND STEVEN A. REYNOLD'S MOTION FOR SUMMARY JUDGEMENT (DOC. #10); TERMINATION ENTRY**

---

## I.     INTRODUCTION

Plaintiff, Peter Becker ("Becker") brings this case under 42 U.S.C. §1983 claiming that

the Defendants, the Board of Trustees Clearcreek Township, Ohio; Dennis Pickett,

Administrator for Clearcreek Township; Ronald Wilhem, Assistant Township Administrator,

Public Safety Director, interim Chief of Police, and law enforcement officer for Clearcreek

Township; Larry Cornett, police officer for Clearcreek Township; and Steven Reynolds, police

officer for Clearcreek Township, violated Mr. Beckers' federal constitutional rights. This matter

is before the Court upon the Defendants' Motion for Summary Judgment (Doc. #10), Plaintiff's

Response (Doc. #14), and the Defendants' Reply (Doc. #15).

## II.     **SUMMARY JUDGMENT STANDARDS**

The central issue presented by a motion for summary judgment is a threshold issue –

whether the case presents a proper jury question.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249-50 (1986).  Summary judgment is warranted when "there is no genuine issue as to any

material fact and ... the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at

247.

The burden falls on the party moving for summary judgment to show that the non-

moving party has failed to establish an essential element of his case upon which he would bear

the ultimate burden at trial.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir.

1996); *see Guarino v. Brookfield Tp. Trustees,* 980 F.2d 399, 403 (6th Cir. 1992).  If the movant

makes this showing, the non-moving party may not rely on the bare allegations of the Complaint

but must present affirmative evidence in support of his or her claims.  *Betkerur*, 78 F.3d at 1087;

*see Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994); *Mitchell v. Toledo Hospital*, 964 F.2d

577, 582 (6th Cir. 1992).  Indeed, the Court is not required "to search the entire record to

establish that it is bereft of a genuine issue of material fact."  *Betkerur*, 78 F.3d at 1087; *see*

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Rather, the burden falls on

the non-moving party to designate specific facts or evidence in dispute.  *Anderson*, 477 U.S. at

250; *see Metiva*, 31 F.3d at 379; *see also Guarino*, 980 F.2d at 404-05.  Yet, this burden is eased

somewhat by the Court's duty to "believe the evidence presented by the nonmovant, and draw all

justifiable inferences in his or [her] favor."  *Cotter v. Ajilon Serv., Inc.,* 287 F.3d 593, 597 (6th

Cir. 2002)(citing *Plant v. Morton Int'l., Inc.,* 212 F.3d 929, 933-34 (6th Cir. 2000)).  The Court,

2

moreover, will not weigh the evidence or evaluate witness credibility when determining whether summary judgment is warranted. *Metiva*, 31 F.3d at 379.

Ultimately, the Court must determine at the summary-judgment stage whether the evidence presents a sufficient factual disagreement to require submission of the challenged claim or claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 251-52; *see Little Caesar Enterprises, Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

### III.    FACTUA L BACKGROUND

#### A.    The Moving Violation

On the evening of Saturday October 25, 2003, Becker met a friend and went out to dinner. (Doc. # 18 at 43). Becker believes he might have had one beer with dinner. (Doc. # 18 at 44). Following dinner, Becker went to a dance club known as Fox and Hound located in Centerville, Ohio. (Doc. # 18 at 46). Here, Becker met Ms. Tracey Honeyman who appeared to be under the influence of alcohol. (Doc. # 18 at 47). Becker became aware of this because he saw her drinking and she spilled alcohol beverages on him while the two were dancing. (Doc. # 18 at 54). Becker stayed at the dance club until closing at approximately 2:00 a.m. (Doc. # 18 at 44, 46). Becker may have had one or two beers at the dance club. (Doc. # 18 at 45). According to Becker he may have had consumed "probably four or less" alcoholic beverages in the course of the evening. (Doc. # 18 at 52).

After the dance club closed, Becker and Ms. Honeyman proceeded to his car with the intention of driving to Mr. Becker's home in Xenia, Ohio. Rather than head east from Centerville, Becker drove south on State Route 48 into Warren County. As Becker approached

the intersection of State Route 122, Officer Cornett was headed north on State Route 48. (Doc. # 10, Aff. of Larry B. Cornett, ¶ 9, Exhibit C). As he passed Becker's motor vehicle, Officer Cornett noticed in his side and rear-view mirrors that Becker's rear license plate light was inoperative, which is a violation of Ohio Revised Code § 4513.05. (*Id.*, ¶ 10-11). Officer Cornett turned to follow Becker's vehicle and confirmed the rear license plate was not illuminated. (*Id.*, ¶ 12). As a result, Officer Cornett determined to initiate a traffic stop for the traffic violation. (*Id.*, ¶¶ 11-13).

Becker turned west onto State Route 122 and Officer Cornett followed. (*Id.*, ¶ 13; Doc. # 18 at 48-49). Before Officer Cornett could activate his emergency lights, however, Becker pulled to the north shoulder of the road to read a map. (Doc. # 10, Cornett Aff., ¶ 13; Doc. # 18 at 49). Officer Cornett pulled behind the Becker auto and activated his emergency lights. The officer exited his cruiser and approached Becker's vehicle. Becker lowered the driver's-side window and already had his license and proof of insurance form in hand, which Officer Cornett perceived as unusual from his education, training and experience; typically, such rapid production of information indicated a driver had something to conceal. (*Id.*, ¶ 15). Officer Cornett asked Plaintiff what he was doing and Becker replied "I am really lost." (Doc. #18 at 51). During the conversation, Officer Cornett noticed a strong odor of an alcoholic beverage coming from Becker's car and observed that Becker's eyes were bloodshot and glassy. (Doc. # 10, Cornett Aff., ¶¶ 15-16; Exh. A, Defts' Req. for Adm. No. 14 and Exh. A attached thereto, *State of Ohio v. Peter S. Becker*, Warren Cty. Ct. No. 03CRA0152, Tr. of Proceedings (Nov. 4,

2003), at 9-10 ("Probable Cause H'rg")[1];  Exh. B, Plt's Resp. to Deft's Req. for Adm. No. 14).

When Officer Cornett inquired about the odor, Becker stated it was emanating from Ms.

Honeyman, whom Becker claimed was intoxicated.  (Doc. # 10, Cornett Aff., ¶ 16).  The

Plaintiff later testified  Ms. Honeyman "probably" had spilled alcoholic beverages on herself

although he could not smell  it at the time of the encounter with Officer Cornett.  (Doc. # 18 at

55).  Becker  also  stated to  Officer Cornett that he had not consumed any alcoholic beverage.

(*Id*. at 57; Doc. # 10, Cornett Aff., ¶ 16).  Officer Cornett requested Becker exit his vehicle,

which he did. (Doc. # 10, Cornett Aff., ¶ 17).  The officer  observed that the Plaintiff leaned on

his car to maintain his balance.  (*Id*.; Probable Cause Hr'g Tr.  at 12; Exhibit D, *State of Ohio v.*

*Peter S. Becker*, Warren C.P. No. 03CR21036, Certified Tr. of  Proceedings (Feb. 19, 2004), at

17 ("Suppression H'rg")).  At deposition, Becker testified he did not recall  whether he leaned

against the car or not.  (Doc.#18 at 58-60).

      In an attempt to determine the source of the odor, Officer Cornett placed Becker in the

rear  of his cruiser, leaving the door open with Becker's feet resting on the ground.  (Doc. # 10,

Cornett Aff., ¶ 18;  Doc.#18 at 62-63; Aff. of Steven A. Reynolds, ¶ 9, Exhibit E).  Prior to

placing the  Plaintiff in the cruiser, Officer Cornett performed a pat-down on Becker for the

officer's safety.  At  that time, Officer Cornett noticed a "slight odor" of an intoxicating beverage

about the Plaintiff's  person.  (Doc. # 10, Probable Cause H'rg Tr. at 14; Suppression H'rg Tr. at

17).  At approximately this time,  Defendant Township Officer Steven A. Reynolds arrived on

the scene to act as a backup officer.  (Doc. # 10, Reynolds Aff., ¶¶ 8-9).  While Officer Reynolds

---

[1] The Probable Cause Hearing transcript contains pagination at both the top and bottom of most pages.  The top  pagination appears to be correct, while the bottom pagination appears to be advanced ten pages.  For example, page 9 of the transcript (as numbered at the top of the page) bears page number 19 at the bottom of the page.  For accuracy and ease of reference, the Court will cite to this transcript using the top-of-the-page pagination.

watched the Plaintiff (*Id.*), Officer Cornett returned to Becker's car to speak with Ms.

Honeyman. (*Id.*, ¶ 10; Cornett Aff., ¶ 19). Upon returning to his cruiser, Officer Cornett noticed

an odor of intoxicating beverage that did not preexist Becker's presence in the cruiser. (Doc. #

10, Cornett Aff., ¶ 20; Probable Cause H'rg Tr. at 4-5. 16-17; Suppression H'rg Tr. at 18,

44-45). During an in-cruiser conversation with the Plaintiff, Becker stated Ms. Honeyman had

spilled an alcoholic beverage on his clothes while they were dancing (Doc. # 10, Probable Cause

H'rg Tr. at 17), although Becker testified the beverage spill had dried and he was unaware of

any smell by the time of his encounter with Officer Cornett. (Doc. # 18 at 53-55).

### B. Plaintiff's Refusal to Perform Field Sobriety Tests and His Arrest

At that time, based upon the odor about his person, his bloodshot and glassy eyes, the

Plaintiff's leaning on his car to maintain his balance and the presence of the odor in the cruiser

after placing Becker inside, Officer Cornett formed the opinion that the Plaintiff was intoxicated.

(Doc. # 10, Cornett Aff., ¶ 21). Officer Cornett next requested that Becker exit the cruiser so

that the officer could administer recognized field sobriety tests: horizontal gaze nystagmus

("HGN"); walk-and-turn; and one-legged stand. (*Id.*, ¶¶ 22-23; Reynolds Aff., ¶¶ 13-14). As

Officer Cornett positioned the Plaintiff and himself in front of the cruiser, Officer Reynolds took

up a position between the road and the scene to protect Becker and Officer Cornett. (Doc. # 10,

Reynolds Aff., ¶ 13). From his vantage point, Officer Reynolds could hear and observe the

interaction between Officer Cornett and the Plaintiff. (*Id.*) Furthermore, as he moved into

position, Officer Reynolds paused when about three or four feet downwind from Becker.

Officer Reynolds was able to detect the odor of alcohol upon the Plaintiff's breath at that time.

(*Id.*, ¶ 17). Officer Reynolds informed Officer Cornett of his observation but is unsure whether

he mentioned the odor before or after  Becker's arrest.  (*Id*., ¶ 18).

Plaintiff refused to perform any field sobriety tests, and stated that he had a prior head trauma that would not permit him to complete the tests successfully. ( Doc. # 18. at 61). Considering the aforementioned factors and Becker's refusal to perform the field  sobriety tests, Officer Cornett determined to arrest the Plaintiff for an OMVI violation.  (Doc. # 10, Cornett Aff., ¶ 25).  Officer Cornett advised Becker of his *Miranda* rights (Doc. # 10, Probable Cause H'rg Tr. at 6;  Suppression H'rg Tr. at 23, 38), and asked Becker to turn around so Officer Cornett could apply  handcuffs.  Plaintiff complied without incident.  (Doc. #18 at 65). In his deposition, Becker testified: (1) Officer Cornett did not use excessive force in applying the handcuffs; (2)  Becker had no complaints regarding the manner of handcuffing; (3) he did not request the  handcuffs be loosened; (4) he did not receive any injuries from being handcuffed; and (5) he  sought no medical or mental health treatment following his arrest.  (Doc. # 18 at 37-38, 65-66, 66-67).  Following the arrest, Officer Cornett secured Becker and Ms. Honeyman, who was too inebriated to drive, in his cruiser.  (Doc. #18  at 47, 66, 74).

### C.    The Subsequent Vehicle Search and Discovery of Loaded Weapons

Oficers Cornett and Reynolds thereafter returned to Becker's  car and performed a search of the vehicle.  (Doc. # 18 at 67-68).  The Officers performed the search in accordance with the Township's inventory search policy, which requires search situations similar to those presented in the instant case: the driver is under  arrest and no one is available to operate the motor vehicle, which then must be towed.  (Doc. # 10, Cornett  Aff., ¶¶ 29; Reynolds Aff., ¶ 20).  During the search, the Officers discovered two loaded handguns  in the vehicle's front-seat console.  (Doc. # 10, Cornett Aff., ¶ 31; Reynolds Aff., ¶¶ 22-23 and attached  Clearcreek Township Vehicle

Inventory/Custody Report). Officer Reynolds' subsequent testing of the weapons showed they were operable. (Doc. # 10, Reynolds Aff., ¶ 22). Plaintiff owned these weapons and admitted they were discovered in the interior of his motor vehicle. (Doc. # 10, Exh. A, Defts' Req. for Adm. Nos. 1-4; Exh. B, Plt's Resp. to Deft's Req. for Adm. Nos. 1-4). After informing Becker he was being cited for carrying a concealed weapon, Officer Cornett transported Plaintiff and Ms. Honeyman to the Warren County Jail (Doc. # 10, Cornett Aff., ¶¶ 32-33; Reynolds Aff., ¶ 24), where Becker subsequently refused to take a breathalyzer test. (Doc. # 10, Aff. of Jeffrey L. Piper and attached BAC Datamaster Subject Test Form, Exhibit F).

> **D.** **The Subsequent Criminal Proceedings and Dismissal of Charges**

Upon the presentation of evidence at a subsequent probable cause hearing, the Warren County Court held sufficient probable cause existed for the traffic stop and subsequent arrest. (Doc. # 10, Probable Cause H'rg Tr. at 23). In addition, the court determined the evidence was sufficient to bind the Plaintiff over to the grand jury for an indictment on the weapons charge. The Warren County Grand Jury subsequently indicted Becker for carrying a concealed weapon. (Doc. # 10, Exh. A, Defts' Req. for Adm. No. 16 and Exh. B attached thereto, Indictment; Exh. B, Plt's Resp. to Deft's Req. for Adm. No. 16).

Following a suppression hearing in Warren County Common Pleas Court, the court held the traffic stop was appropriate, as was Officer Cornett's continued investigation upon detection of "the odor of an alcoholic beverage within the vehicle[.] * * *" *State of Ohio v. Becker*, Warren C.P. No. 03CR 21036 (Dec. and Order, Feb. 23, 2004), at 3. The Court, based on Plaintiff's denial of any alcohol consumption and a finding that there was no evidence of bloodshot or glassy eyes, despite Officer Cornett's prior testimony to the contrary, determined probable cause was lacking for the

OMVI arrest and  suppressed evidence of the seized weapons.  (*Id*. at 4).  The state subsequently

dismissed all charges  on or about February 25, 2004.  (Doc. # 10, Exhibit H, Certified copy of

*Nolle*).

### III.    ANALYSIS

The Defendants assert that Plaintiff has failed to satisfy his burden pursuant to Fed.R.Civ.P.

56 because: (1) the  claims against the Individual Defendants in their official capacities are actually

claims against the  Township, which cannot be held liable on a *respondeat superior* theory; (2) the

Plaintiff, having  initiated no discovery whatsoever, cannot point to any policy, custom or practice

to support his  claims for failure to properly train, for deprivation of civil rights or for conspiracy;

(3) if a  constitutional deprivation occurred, the Officers are qualifiedly immune from Plaintiff's

claims; (4) several of Becker's claims are time-barred; and (5)  the Township is immune and the

Officers are   entitled to qualified privilege upon Plaintiff's emotional distress claim.  Plaintiff

maintains that there are genuine issues of fact as to whether the officers had probable cause to arrest.

(Doc. # 14 at 3).  For the following reasons this Court grants Defendants' Motion for Summary

Judgment.

### A.    The Plaintiff's Claims Against the Individual Defendants in Their Official Capacities

Plaintiff brought his allegations against Defendants Officers Cornett and Reynolds,  Assistant

Township Administrator and Public Safety Director Wilhelm and Township  Administrator Pickett,

in their "individual and official capacities."   (Doc. #1, ¶¶ 3-6). It is well-settled that a suit  against

a government employee in his "official" capacity is nothing more than a suit against the

governmental entity for which he works. *Kentucky v. Graham*, 473 U.S. 159 (1985);  *Matthews v.*

*Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  The proper party for these claims,  therefore, is Defendant

Board of Trustees of Clearcreek Township, Ohio. The official-capacity claims against the Individual Defendants are therefore are dismissed.

### B.     The Township is not Vicariously Liable for its Employees' Alleged Unconstitutional Acts.

Plaintiff alleges that the Township is liable because it "participated in the unlawful conduct" of the Individual Defendants (Doc. #1 at ¶ 22), was "deliberately indifferent" to Becker's "rights and safety" (*Id.*, ¶ 44), and was its co-Defendants' employer. (*Id.*, ¶ 25). There is no evidentiary support for Plaintiff's federal claims against the Township. A municipality is not liable under Section 1983 for its employees' acts on a *respondeat superior* theory, *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978); rather, the plaintiff must identify an offending policy, practice or procedure "for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). In addition, a plaintiff must "proffer sufficient evidence that would allow a reasonable jury to infer that . . . the plaintiff was injured by the policy or custom." *Hynson v. City of Chester Legal Dept.*, 864 F.2d 1026, 1031 (3rd Cir.1988). "This circuit has stated that to satisfy the *Monell* requirements a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir.1993) (internal citations omitted). Plaintiff has not offered evidence to satisfy this standard.

Plaintiff makes various references to vague "official policies, customs, and usages of Clearcreek Township." (Doc. #1, ¶¶ 23). Becker states Defendants Wilhelm and Pickett were authorized policymakers for matters regarding "law enforcement … training … the police department, employment, discipline and fitness for duty … the filing of criminal charges and the

conduct of criminal prosecutions" (*Id.*, ¶ 26), but does not identify any policy. Plaintiff alleges the "policy to engage in the [alleged] conduct … was established by the Municipal Manager and other policy makers of Clearcreek Township in some or all of the following ways" (*Id.*), but does not elaborate on the method by which the Township allegedly established such policy. In addition, the Plaintiff, without specificity, alleges: Township "practices, policies and customs … effected or contributed" to the Officers' alleged use of excessive force (*Id.*, ¶ 34); and, the Township "made policy decisions to retain" the Officers. (*Id.*, ¶ 36). The offensive policy must be "the moving force of the constitutional violation," *Monell*, 436 U.S. at 694; yet, at no time, including at his deposition, did Becker identify any specific offending policy, practice or procedure. (Doc. # 18 at 82-83, 84-85). Because Plaintiff can identify no policy, practice or procedure, the Court grants summary judgment in the Township's favor.

Moreover, the Plaintiff cannot overcome *Monell* by merely alleging, without more, that the Township "ratified" other Defendants' acts by failing to investigate or discipline. (Doc. #1, ¶¶ 22, 35-37). "A municipality may … ratify its employees' acts-thereby subjecting itself to § 1983 liability-by failing meaningfully to investigate those acts." *Otero v. Wood*, 316 F.Supp.2d 612, 627 (S.D. Ohio 2004) (citing *Wright v. City of Canton*, 138 F.Supp.2d 955, 966 (N.D. Ohio 2001)). Nevertheless, a plaintiff still must cite to evidence "showing (1) a final municipal policymaker approved an investigation into [the alleged unlawful] conduct (2) that was so inadequate as to constitute a ratification" of the alleged unlawful conduct. *Wright*, 138 F.Supp.2d at 966. Here, Becker points to no evidence concerning the nature and scope of any after-the-fact investigation. (Doc. # 14). Because there is no triable issue of ratification, the Court dismisses Plaintiff's claims against the Township.

11

Plaintiff also maintains the Township participated in a conspiracy with its co-Defendants to deprive Becker of his constitutional rights. (Doc. #1, ¶¶ 19-21, 27, 33). Plaintiff's conclusory allegations against all Defendants fail to satisfy the Sixth Circuit's heightened pleading standard for conspiracy. "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987). In *Gutierrez*, the Sixth Circuit struck a conspiracy claim where the plaintiff averred "'his job termination was the ultimate result of the conspiracy of Defendants to punish Plaintiff for his refusal to whitewash his investigation of city contracts' [and] defendants 'conspired against Plaintiff to unlawfully deprive him of his employment, his good name and reputation as punishment for Plaintiff's continued refusal to whitewash city contracts.'" *Id*. at 1539.

Plaintiff asserts the Defendants: (1) acted in concert; (2) to fail to protect him from "the unlawful actions of other Defendants," who were each acting as employees or agents of the others; (3) to deprive him of various constitutional rights; and (4) to assert oppressive governmental power to injure him. (Doc. # 1). Plaintiff does not identify any specific concerted actions nor does he identify any specific rights impinged by the unidentified concerted actions. Becker's assertions are as devoid of substance as those stricken in *Gutierrez*. The Court grants Defendants summary judgment on Becker's conspiracy claim.

Furthermore, Plaintiff cannot satisfy the elements of conspiracy under Section 1983. To plead a civil conspiracy, a plaintiff must show "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Hooks v. Hooks*, 771 F.2d

12

935, 944 (6th Cir.1985).  Becker has not produced any evidence to show any plan or agreement among the co-Defendants, in which all shared and in furtherance of which any Defendant took any overt action.

In addition, a "conspiracy" alone is not an actionable claim under 42 U.S.C. § 1983 – there must be a constitutional deprivation.  "It is essential that the conspiratorial conduct in fact resulted in a violation of plaintiff's constitutional rights." *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D.Mich.1988) (citing *Vaden v. Village of Maywood,* 809 F.2d 361, 366 (7th Cir.1987)). Plaintiff has not shown any violation of his constitutional rights which is fatal to his claim. *Id*.  The Court therefore grants summary judgment to all Defendants on Plaintiff's conspiracy claim.

### C.  Officers Cornett and Reynolds Acted With Probable Cause

The record in this case shows that the Township officers did not commit a constitutional violation when Officer Cornett stopped, investigated and arrested Plaintiff and when both officers searched Becker's vehicle because probable cause existed to make the arrest, which justified the subsequent search.  Pursuant to the Fourth Amendment, warrantless arrests are reasonable if based upon probable cause.  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "[P]robable cause is a flexible, common-sense standard …." *Texas v. Brown*, 460 U.S. 730, 742 (1983).  Probable cause is found, based on the totality of the circumstances, *Illinois v. Gates*, 462 U.S. 213, 238 (1983), when "at the moment the arrest was made … the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964).  The existence of probable cause, therefore, is not dependent upon whether the criminal defendant actually committed the offense. *Michigan v.*

*DeFillippo*, 443 U.S. 31, 36 (1979).

Furthermore, this Court is not bound to one state court's determination concerning probable cause because Officers Cornett and Reynolds did not have a fair and full opportunity to litigate the issue; *i.e.*, they were "merely … witness[es], … not represented by counsel and [having] no interest in the outcome.   In this proceeding, [they are] exposed to personal liability and damages on a constitutional claim and … pendent state claim[s].   The outcome in the first proceeding cannot, therefore, be held to bind [them] here." *O'Kelly v. Russell Tp. Bd. of Trustees*, 675 F.Supp. 389, 392 (N.D.Ohio 1987).  As in *O'Kelly*, Ohio's application of the  doctrine of collateral estoppel would bar offensive use of the common pleas court's probable cause  holding, particularly where there are conflicting state court opinions on the issue of probable cause.

### 1.    Officer Cornett Properly Initiated the Traffic Stop

Officer Cornett observed that Becker's rear license plate was not illuminated.  Operating a motor vehicle without a rear license plate light is a violation of Ohio law.  Ohio Rev. Code § 4513.05.  "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir.1993) (driving without visible license plate in violation of city ordinance gave rise to probable cause for traffic stop).  If probable cause justifying a traffic stop exists because of a traffic violation, "it is irrelevant what else the officer knew or suspected about the traffic violator at the time of the stop." *Ferguson*, 8 F.3d at 391.  Following his initial observation, Officer Cornett turned, followed the Plaintiff and confirmed the light was not  working.  (Doc. # 10, Cornett Aff., ¶ 12).  Officer Cornett's ensuing traffic stop was reasonable because he  possessed probable cause to believe that a traffic offense had occurred. Plaintiff

14

concedes that the initial stop was justified but contends that his subsequent arrest was without probable cause. (Doc. # 14 at 2).

### 2.     Officer Cornett Possessed Reasonable Suspicion to Expand the Investigation

When Officer Cornett approached Becker's vehicle and detected the odor of intoxicating beverages in the passenger compartment, he gained reasonable articulable suspicion to expand the investigation.  If events occur during a traffic stop that  provide an officer with "specific and articulable facts … taken together with rational inferences  from those facts" that, if allowed to drive, an individual would engage in criminal activity, i.e., driving  while intoxicated, the officer is justified in detaining the driver beyond the scope of the original  stop. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir.1999). Indicia of intoxication sufficient to produce reasonable suspicion include:  odor emanating from the vehicle and bloodshot and glassy eyes, *Ohio v.  Mapes*, No. F-04-031, 2005-Ohio-3359, at ¶ 42, (Ohio Ct.App., June 30 2005) (same plus  consideration of time of the stop), as well as odor on or about the  person, the intensity of the odor emanating from the car or person and lack of coordination. *Ohio v. Evans*, 127 Ohio App.3d 56, 63, 711 N.E.2d 761 (Ohio Ct.App.1998) (factors for court to weigh when determining if officer reasonably ordered field sobriety tests).

Substantially similar indicia supported Officer Cornett's continued investigation.  (Doc. # 10,  Cornett Aff., ¶ 8).  The officer detected a strong odor of intoxicating beverage emanating from the  Plaintiff's motor vehicle.  (*Id*., ¶ 15).  Becker's eyes were bloodshot and glassy.  (*Id*., ¶ 16; Probable Cause H'rg at 9-10).  Becker  had difficulty maintaining his balance.  (Doc. # 10, Cornett Aff.,  ¶ 17).  In addition, the stop occurred early on the morning of October 26, 2003 -- a Sunday -- and  Becker claimed to be headed from Centerville to Greene County, yet was stopped in Warren

County, several miles southwest of his destination.  (Doc. # 10, Cornett Aff., ¶¶ 9, 15).  Officer Cornett  reasonably continued the investigation beyond the scope of the stop.

### 3.    Officer Cornett had Probable Cause to Arrest the Plaintiff for OMVI.

Based on the totality of the circumstances, Officer Cornett possessed the requisite probable cause to arrest Becker for OMVI.  The officer  knew all of the factors that created reasonable suspicion, which he could consider in reasonably making an arrest.

In  addition, by the time Officer Cornett arrested Plaintiff, he had detected the odor of alcoholic  beverage in his cruiser after Becker had been seated in the rear compartment (*Id*., ¶ 20), and Plaintiff had refused to perform the field sobriety tests (*Id*., ¶ 24; Doc. # 18 at 61), which is a proper  factor to consider under Ohio law. *Ohio v. Flynt*, No. 2001-P-0116, 2003-Ohio-1391, at ¶ 16 (Ohio  Ct.App. Mar. 21, 2003). Although at the scene Becker denied consuming any alcoholic beverage, (Doc. # 18 at 58), he later admitted  he had been drinking. (*Id*. at 59).  Furthermore, Officer Reynolds  confirmed the presence of an odor of alcoholic beverage on Plaintiff's breath. (Doc. # 10, Reynolds Aff., ¶  18).  Based upon what he knew, Officer Cornett  reasonably believed Becker was operating a motor  vehicle while under the influence of  alcohol.  Officer Cornett acted reasonably in arresting Plaintiff based on probable cause.

### D.    The Officers' Subsequent Search Incident to Arrest and/or Inventory Search of the Plaintiff's Motor Vehicle was Constitutional

Once Officer Cornett arrested Plaintiff, the subsequent search of Becker's automobile  was proper, whether the search was incident to arrest or an inventory search of the motor vehicle.

Where an officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that

automobile." *New York v. Belton*, 453 U.S. 454, 460 (1981). The only prerequisite to a valid search incident is a valid custodial arrest; "that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson*, 414 U.S. 218, 235 (1973). The scope of the search extends to those areas within the control of the arrestee, even if the arrestee is seated in a police cruiser and no longer has access to those areas. *Thornton v. United States*, 541 U.S. 615, 620-21 (2004). After Officer Cornett arrested the Plaintiff and removed Ms. Honeyman from Becker's car, Officers Cornett and Reynolds were justified in performing a search incident to arrest. The Officers conducted a constitutionally-valid search of Plaintiff's car.

### E. The Officers did not Use Excessive Force

According to his own testimony, Plaintiff cannot satisfy the elements of an excessive force claim under 42 U.S.C. 1983. An analysis of whether officers used excessive force returns to the familiar balancing of the intrusiveness of the seizure under the Fourth Amendment and the governmental interests at issue viewed by the totality of the circumstances to determine whether the seizure was reasonable. *Graham v. Connor*, 490 U.S. 386, 396 (1989). An excessive force claim includes an allegation of unreasonably forceful handcuffing. *Solomon v. Auburn Hills Police Dept.*, 389 F.3d 167, 173 (6th Cir. 2004). To succeed in the Sixth Circuit, plaintiffs must allege physical injury, *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir.2001), or that "officers handcuffed the plaintiff excessively and unnecessarily tightly and ignored the plaintiff's pleas that the handcuffs were too tight." *Burchett v. Kiefer*, 310 F.3d 937, 944-45 (6th Cir. 2002). Plaintiff testified he did not seek physical or mental health treatment following his arrest and that he did not complain of any discomfort after Officer Cornett handcuffed him. (Doc. # 18 at 37-38, 65-66, 66-67; Doc. # 10, Cornett Aff., ¶ 26; Reynolds Aff., ¶ 16). In fact, the Plaintiff denied any basis for his excessive

17

force claim. (Doc. # 18 at 65).

**F.    Officer Cornett did not Testify Falsely or, in the Alternative, is Entitled to Absolute Immunity**

Plaintiff alleges that Officer Cornett  gave "false testimony and information" when the officer testified at the probable cause and suppression hearings. The only testimony Becker specifically cited was an alleged discrepancy between: (1) Officer Cornett's statement at the probable cause hearing that he followed Becker's vehicle south on State Route 48 where he saw Becker's license plate light was out; and (2) the officer's suppression hearing testimony that he was headed north on State Route 48 and first saw Becker's light was out by looking in his cruiser's side and rear view mirrors before turning and following the Plaintiff's car south.  (Doc. # 18 at 86-87; Doc. # 10, Probable Cause Hr'g Tr. at 2, 8; Suppression Hr'g Tr. at 12-13, 35).[2]

Apart from the fact that the discrepancy is not clear-cut (*compare* Probable Cause Hr'g Tr. at 8 ("I was traveling south as well ….") *with* Suppression Hr'g Tr. at 13 ("I turned [south] and began to follow Mr. Becker's vehicle.")),  Plaintiff did not deny that his rear license plate light  was not working (*see* Doc. # 18 at 40, 42), and the state trial court did not cite this alleged discrepancy in its decision finding no probable cause; rather, it found Officer Cornett's approach "lawful"  (Doc. # 10, Exh. G, *Ohio v. Becker*, Warren C.P. No. 03CR 21036 (Dec. and Order, Feb. 23, 2004), at 3). Furthermore, Becker does not challenge the traffic citation in this action.  Whether Officer Cornett remembered all of the events in proper order at both hearings does not equate to "false testimony and information" and is not a constitutional violation. Moreover, under the circumstances presented, Officer Cornett is entitled to absolute immunity for testimony rendered in  a judicial proceeding.

---

[2] Plaintiff also alluded to "some indication" of false grand jury testimony, but could not state what testimony  was presented to the grand jury.  (Doc #18 at 87-88).

*Briscoe v. LaHue*, 460 U.S. 325, 328 (1983).

### G. The Officers are Entitled to Qualified Immunity

Because there was no constitutional deprivation, this Court need not consider whether Officers Cornett and Reynolds are entitled to qualified immunity. As stated by the Supreme Court, "qualified immunity will protect all but 'the plainly incompetent or those who knowingly violate the law.'" *Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir.2003) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In fact, to defeat qualified immunity, the unlawfulness of the official's action must be so apparent that no reasonable official at the scene would disagree over whether the action violated the plaintiff's rights. *Id.* The court is "to concentrate at the outset on the definition of the constitutional right and to determine whether, on the facts alleged, a constitutional violation could be found. . . ." *Saucier*, 533 U.S. at 207; *see Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (determination of "purely legal question" of constitutional violation is "necessary concomitant" to decision whether constitutional right is "clearly established"). Thus, the court makes an initial determination whether a plaintiff states a valid claim under 42 U.S.C. § 1983. *Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1423 (6th Cir.1996).

Under the two-pronged analysis, the next step is to ask whether the right was clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. "In other words, where a constitutional violation exists, an officer's personal liability turns on the 'objective legal reasonableness' of the action in view of the circumstances the officer confronted assessed in light of 'clearly established' legal rules." *Dunigan*, 390 F.3d at 491. The Officers' actions did not violate any constitutional provisions. In

19

the alternative, if a Fourth Amendment right was violated, the record is clear that Officers

Cornett and Reynolds acted as reasonable officers when confronted with the instant scenario.

The Court's qualified immunity analysis is substantially similar to an assessment of probable

cause, with "the added dimension that they must be analyzed in light of the law as it would have

been understood by a reasonable officer …." *Lyons v. City of Xenia*, 258 F. Supp.2d 761, 777

(S.D.Ohio 2003), *aff'd in part, rev'd in part*, 90 Fed. Appx. 835 (6th Cir., Jan. 27, 2004), *vacated

sub nom. Foubert v. Lyons*, 543 U.S. 1033 (2004). The indicia of intoxication present at the

scene; a strong odor of alcohol in Becker's car; impaired motor coordination when Plaintiff

leaned on his car; a continued odor in Officer Cornett's cruiser and Becker's refusal to perform

field sobriety tests would lead a reasonable police officer to believe he had probable cause.

These are recognized indicia under Ohio law. *Flynt*, 2003-Ohio-1391, at ¶ 16; *see Ohio v.

Finch*, 24 Ohio App.3d 38, 40, 492 N.E.2d 1254 (Ohio Ct.App.1985). Officer Cornett acted as a

reasonable officer in arresting Becker under these circumstances. Once the arrest occurred, both

Officers reasonably acted upon well-settled law, *supra*, permitting a search of the Plaintiff's

vehicle interior pursuant to a search incident to arrest and inventory search. In the interest of

making a complete record, the Court therefore finds the Officers are entitled to qualified

immunity.

**H.    Plaintiff has Failed to Produce Evidence to Create a Material Issue of Fact in Support his Claims of Inadequate Training, Retention and/or Supervision of the Officers**

Plaintiff maintains that the Defendants failed to properly train or supervise the Officers

20

and/or that the Defendants improperly retained them as such.  Federal courts apply a "deliberate indifference" standard to determine whether a municipality so inadequately trained its personnel as  to be liable under Section 1983.  *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County  v. Brown*, 520 U.S. 397, 410 (1997).  The Sixth Circuit has established a tripartite analysis to determine whether a plaintiff has shown a failure to train.  "[T]he plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was  closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch.  Dist.*, 455 F.3d 690, 700 (6th Cir.2006).

The instant record contains no evidence that the Township failed to properly train or supervise Officers Cornett and Reynolds.  Plaintiff has not identified  any evidence to show the Officers' training, supervision and/or retention inadequate because the Township disregarded a known or obvious risk or consequence, which then related to or caused his  injuries; indeed, Plaintiff has not identified *any* such policy.  Moreover, for these reasons and  those set forth, *supra*, the Plaintiff cannot show the Township or Defendants Wilhelm or Pickett  ratified the Officers' allegedly unconstitutional acts because of a failure to investigate.  The Court grants the Defendants summary judgment on these claims.

## I.     Plaintiff's State Claims for False Arrest and Malicious Prosecution are Time-barred

Plaintiff asserts that the Defendants, as a direct and proximate result of their alleged unlawful acts, subjected him to false arrest (Doc. #1, ¶¶ 49-53), and malicious criminal

prosecution (*Id.*, ¶¶ 55-57). This Court must apply Ohio's relevant statute of limitations for these state law claims. 28 U.S.C. §1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Becker did not file his Complaint within the appropriate statute of limitations for these claims. A claim for false arrest under Ohio law is governed by a one-year statute of limitations. Ohio Rev.Code § 2305.11; *Mayes v. Columbus*, 105 Ohio App.3d 728, 746, 664 N.E.2d 1340 (Ohio Ct.App.1995). The statute begins to run on the date of arrest. *Mayes*, 105 Ohio App.3d at 746; *see McCune v. City of Grand Rapids*, 842 F.2d 903, 906 (6th Cir.1988) (same for Section 1988 claim). In the instant case, Officer Cornett arrested the Plaintiff on October 26, 2003. (Doc. #18 at 14). Plaintiff filed his complaint on October 26, 2005 - two years after his arrest. The Court grants the Defendants summary judgment because the Plaintiff's false arrest claim is time-barred. Even assuming the claim is brought under Section 1983 and that Ohio's two-year statute of limitations, Ohio Rev.Code § 2305.10, applies, summary judgment for the Defendants is appropriate because Becker cannot satisfy the elements of the claim. In Ohio, false arrest requires proof of confinement without lawful privilege against the plaintiff's will. *Williams v. Franklin Cty. Bd. of Comm'rs.*, 145 Ohio App.3d 530, 550, 763 N.E.2d 676 (Ohio Ct.App.2001). Officer Cornett had probable cause and, therefore, the lawful privilege to affect the Plaintiff's arrest. Furthermore, Officer Reynolds cannot be liable because he did not arrest the Plaintiff. Officer Cornett is also shielded by qualified immunity. The Court grants the Defendants summary judgment on the Plaintiff's false arrest claim.

Similarly, the Court issues summary judgment for the Defendants upon Plaintiff's malicious prosecution claim. The same one-year statute of limitations governs this state-law claim. Ohio Rev.Code § 2305.11(A). This cause of action does not begin to accrue until

proceedings  against a criminal defendant are terminated in the defendant's favor.  *Levering v.
National Bank of  Morrow Cty.*, 87 Ohio St. 117, syllabus, 100 N.E. 322 (1912).  At the latest,
the state terminated  criminal proceedings against Becker on or about February 25, 2004, when
the prosecutor filed  a *Nolle Prosequi*.  (Doc. # 10, Exh. H, Certified copy of *Nolle*).  Again,
Plaintiff filed his complaint on  October 26, 2005, approximately twenty months following the
dismissal.

Moreover, even assuming the claim is not time-barred, Plaintiff cannot escape summary
judgment as to the Defendants.  The elements of a malicious criminal prosecution claim include:
"(1) malice in  instituting or continuing the prosecution, (2) lack of probable cause, and (3)
termination of the  prosecution in favor of the defendant."  *Rogers v. Barbera*, 170 Ohio St. 241,
paragraph one of the  syllabus, 164 N.E.2d 162 (1960).  In addition to Officer Cornett's
reasonable probable cause  determination, the Officers cannot be liable under Ohio law "for the
instigation of criminal  proceedings, where they provide the prosecutor with 'a full and fair
disclosure of all the material  facts as revealed by [their] investigation, including [the accused's]
exculpatory statements.'"  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 317 (6th Cir.2005)
(quoting *Robbins v. Fry,* 72  Ohio App.3d 360, 362, 594 N.E.2d 700 (1991))."  That is precisely
what occurred with the  Defendants.  (Doc. # 10, Cornett Aff., ¶ 34). The Court  grants summary
judgment to the Defendants on Plaintiff's state law claims.

**J.**     **The Township is Immune and the Officers are Qualifiedly Immune from
Plaintiff's Intentional/Reckless Infliction of Emotional Distress  Claim**

Ohio law is clear that the Township is immune from intentional tort claims.  The Ohio
Supreme Court held there is no exception to a political subdivision's immunity for intentional

infliction of emotional distress. *Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 452, 639 N.E.2d 105 (Ohio 1994); *Chesher v. Neyer*, 392 F.Supp.2d 939, 958 (S.D. Ohio 2005). The Officers are entitled to qualified immunity regarding Becker's emotional distress claim. Ohio Rev. Code § 2744.03(A)(6). Becker has not identified any evidence that the Officers or any other Defendants were manifestly outside the scope of their employment. The Township employs Officers Cornett and Reynolds as police officers; they hold a peace officer certification. (Doc. # 10, Cornett Aff., ¶¶ 3, 5; Reynolds Aff., ¶¶ 3-4). As such, they have a duty to arrest traffic law violators, *Ohio v. Meza*, No. L-03-1223, 2005-Ohio-1221, at ¶ 19 (Ohio Ct.App. Mar. 18, 2005), and they have the authority to initiate traffic stops and to make arrests. Ohio Rev. Code § 2935.03(A).

Officer Cornett properly initiated the stop based on probable cause of a traffic violation, expanded his investigation upon reasonable suspicion of intoxication and reasonably arrested Plaintiff after his lack of balance, continued odor in the cruiser and Becker's refusal to perform a field sobriety test. The Officers followed the arrest with a valid search incident or inventory search of Plaintiff's vehicle. Plaintiff has not pointed to any evidence that either Officer Cornett or Officer Reynolds violated any Township policy. The facts show the Officers acted appropriately during the entire course of the subject incident; Becker has not identified any evidence to show the Officers' actions were malicious, in bad faith, wanton or reckless. The Officers are entitled to qualified immunity.

In addition, the Plaintiff has not shown a triable issue on his intentional/reckless infliction of emotional distress claim. In Ohio, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for

24

such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, &* Helpers *of Am.*, 6 Ohio

St.3d 369, syllabus, 453 N.E.2d 666 (Ohio 1983). When the alleged infliction is unaccompanied

by a contemporaneous physical injury, the emotional distress must be serious. *Powell v. Grant*

*Med. Ctr.*, 148 Ohio App.3d 1, 5-6, 771 N.E.2d 874 (Ohio Ct.App.2002). A claim for

outrageous conduct without evidence of professional treatment is generally insufficient. *Miller*

*v. Premier Indus. Corp.*, 136 Ohio App.3d 662, 675, 737 N.E.2d 594 (Ohio Ct.App.2000);

*Plikerd v. Mongeluzzo*, 73 Ohio App.3d 115, 126, 596 N.E.2d 601 (Ohio Ct.App.1992); *Kurtz v.*

*Harcourt Brace Jovanovich, Inc.*, 69 Ohio App.3d 267, 273, 590 N.E.2d 772 (Ohio

Ct.App.1990). If there was any emotional distress resulting from Becker's arrest, it is clear such

consequence was not serious, as he sought no treatment following his arrest. (Doc. # 18 at

37-38). The Court grants the Officers summary judgment on this claim.

**IT IS THEREFORE ORDERED THAT:**

1.    Defendants' the Board of Trustees Clearcreek Township, Ohio, Dennis A. Pickett,

Ronald L. Wilhelm, Larry B. Cornett, and Steven A. Reynold's Motion for Summary Judgement

(Doc. #10) is **GRANTED**; and,

2.    This case is terminated on the docket of this Court.


September 30, 2008

   s/ Sharon L. Ovington   
Sharon L. Ovington
United States Magistrate Judge
